UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOUTHERN ATHLETIC CLUB, LLC                CIVIL ACTION

VERSUS                                      NO:  06-2605

THE HANOVER INSURANCE                       SECTION: "S" (4)
COMPANY ET AL.

ORDER AND REASONS

IT IS HEREBY ORDERED that Southern Athletic Club, LLC's motion to remand the

case is GRANTED.  The court lacks subject matter jurisdiction, and the case is REMANDED to

the 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana,.  (Document #8.)

IT IS FURTHER ORDERED that Hanover's "Motion to Include Statement Prescribed

by 28 U.S.C § 1292(b) and to Stay Order of Remand" is DENIED.  (Document #24.)


I. BACKGROUND

Southern Athletic Club, L.L.C. (Southern) filed a petition for damages in the 34th Judicial

District Court for the Parish of St. Bernard, State of Louisiana, against The Hanover Insurance

Company (Hanover), its insurer; Property Loss Consulting, Inc. (PLC), the firm hired by

Hanover to adjust claims; Ron Davis, a PLC adjuster; and Aparicio, Waler & Seeling, Inc.

(Aparicio), an insurance broker.

On March 7, 2005, Southern renewed the Commercial Lines Policy issued by Hanover, covering the building, its contents, and loss of business income and other expenses.  The limit for damage to the building is $1,701,708, and for damage to the contents, $405,169.  On August 29, 2005, the Club's buildings, equipment, and furnishings were lost as a result of wind and flooding caused by Hurricane Katrina.

Hanover retained PLC as a claims adjuster.  Southern's president, Charles Naparalla, met with a PLC adjuster, William Crane, and provided documents concerning the losses.  Crane advised Southern that the building and all contents were a total loss as a result of hurricane force winds, tornadoes, and wind-driven rain.  Crane suggested that Southern retain a local engineering and architectural firm to confirm the cause of the damage and to prepare a detailed inventory of the damage.  On October 24, 2005, Southern provided Hanover with a report of Nofie Alphonso Architects and Engineers, indicating that hurricane force winds, tornado activity, and wind-driven rain "racked" the steel-framed building and compromised the belted and welded connections and anchor bolts.  Southern also provided a detailed list of damaged contents with a replacement cost of $418,727.

After numerous attempts to obtain information about the claim, Southern was referred to Ron Davis, a PLC adjuster assigned to handle the claim.  On December 16, 2005, Davis confirmed Crane's earlier evaluation of the loss.  Southern alleges that Davis advised Naparalla that he had not been paid for his work for PLC and Hanover and repeatedly asked Southern for a personal loan.  When Southern declined, Davis did not return telephone calls or contact Southern.  In late December 2005 or early January 2006, Southern learned that Davis was no

longer employed by PLC, but was still handling the claim.

On December 21, 2005 and January 23, 2006, Southern wrote to Hanover regarding the status of the claim. Thereafter, D.C. Reeves, a PLC adjuster, advised Southern that he was replacing Davis as the adjuster handling the claim. On February 24, 2006, Hanover advised Southern that the building and its contents were underinsured by more than $375,000 at the time of loss. Further, there was a penalty under the coinsurance clause of the policy, and coverage was excluded for some damage to the building and all damage to the first floor because it was caused by flood waters. The policy provided replacement coverage for the building and contents only if Southern repaired or replaced the building and its contents, and Southern could settle the loss on an actual cash value basis after depreciation. The actual cash value of the building after depreciation was $162,669.15, and the value of the contents on the second floor after depreciation was $255,294.96.

Hanover removed the case to federal court based on diversity jurisdiction and, alternatively, the Multiparty, Multiforum Trial Jurisdiction Act. Southern filed a motion to remand.

## II. DISCUSSION

### A.  Legal standard

Motions to remand to state court are governed by 28 U.S.C. § 1447(c), which provides in relevant part: "If at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Improper joinder may be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff

to establish a cause of action against the non-diverse party in state court." Smallwood v. Illinois Central Railroad Co., 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*) (citing Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)).  The test to determine whether the plaintiff is able to establish a cause of action against the non-diverse party is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id.  A court may predict whether the plaintiff has a reasonable basis of recovery under state law by conducting "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." Id.  "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." Id.

**B.  Improper joinder**

Southern contends that the court lacks diversity jurisdiction because Southern and Aparicio are both Louisiana corporations.[1]

Hanover contends that Aparicio's citizenship should not be considered in determining if the parties are diverse.  Specifically, Hanover argues that Aparicio is improperly joined because the claims against it are perempted, and alternatively, Southern fails to state a claim of negligence against Aparicio.

**1.  Peremption**

---

[1]    Southern agrees that PLC is not a Louisiana corporation.  Although the citizenship of Davis is not apparent, Southern's motion to remand does not base the lack of diversity on Davis' citizenship.

Hanover contends that the claims against Aparicio are perempted under La. Rev. Stat. 9:5606.[2]  Hanover argues that Southern purchased the policy through Aparicio in 2001, and the renewal policies did not effect any substantive or material restrictions in coverage provided by the original policy.  Specifically, Hanover contends that the original and renewal policies contain identical exclusions for losses caused by flood and surface water, identical coinsurance clauses,[3] and identical clauses for "Optional Coverage" for "Replacement Cost."[4]

Generally, subsequent renewals of insurance policies "do not operate to restart peremption."  Dobson v. Allstate Ins. Co., 2006 WL 2078423 at *8 (E.D. La. 2006) (citing Biggers v. Allstate Insurance Co., 886 So.2d 1179, 1182-83 (La. Ct. App. 2004)).  "In order for each renewal to be the basis of a separate tort, the complained of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent damages."  Biggers,

---

[2]   La. Rev. Stat. 9:5606 provides in relevant part:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.  However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

[3]   The coinsurance clause states that Hanover "will not pay the full amount of any loss" if the value of the covered property at the time of the loss was greater than a specified percentage of the applicable policy limit.

[4]   The clause states that Hanover "will not pay on a replacement cost basis for any loss or damage . . . [u]ntil the lost or damaged property is actually repaired or replaced."  Until the repairs are actually completed, the insured "may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis."

886 So.2d at 1182; see also Sonnier v. Louisiana Farm Bureau Mutual Ins. Co., 924 So.2d 419, 422 (La.Ct. App. 2006) (a renewal may constitute a separate act if an insured requests specific coverage at the time of renewal).

The court finds that the defendant has not established that there is no reasonable basis to predict that the March 7, 2005, renewal of the policy was not a separate and distinct act from the original purchase of the policy. Naparalla communicated to Aparicio in 2001 that he wished to insure the property at its full value with replacement cost coverage. Each year from 2001 to 2005 prior to the renewal date, Naparalla discussed the increase in the value of the property with Aparicio, and the policy limits were increased to provide additional coverage.

Naparalla discovered that the building and its contents were underinsured by more than $375,000 when he received a loss adjustment from Hanover on February 24, 2006. Southern filed suit on March 8, 2006; therefore, the suit was filed within the peremptive period of La. Rev. Stat. § 9:5606.

2**. Negligence**

Alternatively, Hanover contends that Aparicio is improperly joined because Southern cannot establish a cause of action in negligence against Aparacio. Hanover argues that Aparicio has no duty to advise the client about the cost, availability, or desirability of certain insurance coverages unless it assumes or agrees to such a duty.

Southern contends that an insurance broker has a general duty to use reasonable diligence to procure the coverage requested by the client and to notify the client promptly if he has failed to obtain the requested insurance. Southern argues that Aparicio breached its duty to obtain

coverage for the property at its full value with replacement cost coverage.

In <u>Karam v. St. Paul Fire & Marine Ins Co.</u>, 281 So.2d 728, 730-31 (La. 1973), the Supreme Court of Louisiana discussed the insurance agent's duty to the client:

> An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.

"[A]n insurance agent's duty to his client can be greater than merely the procuring of requested insurance, depending on what services the agent holds himself out as performing and on the specific relationship and agreements between the particular agent and client." <u>Graves v. State Farm Mut. Auto Ins. Co.</u>, 821 So.2d 769, 773 (La. Ct. App. 2002). However, an insured is charged with knowledge of the terms of the policy. <u>Dobson v. Allstate Ins. Co.</u>, 2007 WL 2078423 at *11 (E.D. La. 2006).

Naparalla alleges that, prior to each renewal, he discussed the value of the property with a representative of Aparicio and requested full coverage for the property. He further alleges that each year he purchased the building limit of insurance based on those conversations and Aparicio's expertise. The allegations are sufficient to survive a Rule 12(b)(6) challenge for failure to state a claim that Aparicio assumed a duty greater than merely procuring insurance and that he was negligent in performing the requested services. Accordingly, the court finds that Hanover has not established that there is no reasonable basis to predict that Southern may recover against Aparicio on the state law claim. Hanover has not established improper joinder,

7

and the court lacks diversity jurisdiction.

**C.  Misjoinder of parties**

Southern contends that the parties are properly joined because the action seeks recovery for the same injury, the lack of insurance proceeds to pay for damage to the property.  Southern argues that the claims and parties are not fraudulently misjoined because there is a "palpable connection" among those joined.

In <u>Radlauer v. Great Norther Ins. Co.</u>, 2006 WL 1560791 (E.D. La. May 16, 2006), the plaintiff filed suit against Great Northern Insurance Company (Great Northern), Gerald Murray, and Insurance Underwriters Limited (Insurance Underwriters), a non-diverse defendant.  Great Northern and Murray removed the case based on fraudulent misjoinder of Insurance Underwriters because the claims against the non-diverse defendant were not sufficiently related to those against the diverse defendants.  The court in <u>Radlauer</u> did not resolve the question whether the Fifth Circuit recognizes the fraudulent misjoinder theory announced in <u>Tapscott v. MS Dealer Serv. Corp.</u>, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds,* <u>Cohen v. Office Depot</u>, 204 F.3d 1069 (11th Cir. 2000), in which the Court of Appeals for the Eleventh Circuit held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action."  The district court in <u>Radlauer</u> found that there was no misjoinder because there was only one plaintiff suing an insurance company, one of its adjustors, and the seller of the insurance policy.  Although Radlauer alleged different grounds of recovery against the defendant, there was a palpable or real connection between the claims and the parties joined because the plaintiff sought recovery was for the same

8

injury.

The court agrees with the reasoning of <u>Radlauer</u> and holds that there is no misjoinder of the parties in this case.  As in <u>Radlauer</u>, Southern seeks recovery from the insurance company, the insurance agent, and the adjuster, based on insurance coverage for the damaged property. This is not a case in which the plaintiffs have joined unrelated claims to defeat the court's jurisdiction.  Because the parties are not "fraudulently misjoined," diversity jurisdiction is lacking.

**D.  Jurisdiction under the Multiparty, Multiforum Trial Jurisdiction Act (MMTJA)**

The defendants contends that the court has jurisdiction under 28 U.S.C. § 1369, the Multiparty, Multiforum Trial Jurisdiction Act. (MMTJA)  Section 1369 provides in relevant part:

> (a) **In general**.  The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location if–
> (1) a defendant resides in a State and a substantial part of the accident took place in another State or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;
> (2) any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or
> (3) substantial parts of the accident took place in different States.
>
> (b)  **Limitation of jurisdiction of district courts.–**The district court shall abstain from hearing any civil action described in subsection (a) in which–
> (1) the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens; and
> (2) the claims asserted will be governed primarily by the laws of that State.
>
> The Act "would streamline the process by which multidistrict litigation governing

9

disasters are adjudicated.  H.R.Conf.Rep. 107-685, §11020, 202 U.S.C.C.A.M. 1120 (2002).

"The general provision confers original jurisdiction on federal district courts when certain civil

actions have only minimal diversity among the parties."  23 Rev. Litig. 177 at 5 (2004).  "The

change to minimal diversity in class actions aims to promote the purposes of the class action

device:  fairness, uniformity, efficiency, and manageability in mass litigation."  Id. at 4.  The

intended scope of minimal diversity is to reach a "very narrowly defined category of cases."  Id.

at 5.  While the MMTJA could apply in an action by a single plaintiff against two defendants,

"[m]ore likely, many plaintiffs and many defendants would be involved in the typical suit which

would fall under the MMTJA, and often certification of a class action would be sought."

H.Alston Johnson, III, Current Topics in Federal Subject Matter Jurisdiction Based on Diversity

of Citizenship (June 7, 2006).

        The narrow jurisdiction under the MMTJA is not intended to apply to a case where there

are not many plaintiffs and many defendants.  See e.g. Chehardy v. Wooley, Nos. 06-1672, 06-

1673 and 06-1674 (E.D. La.) (jurisdiction under § 1369; multi-plaintiff, multi-defendant case

consolidated for pretrial purposes with Colleen Berthelot v. Boh Brothers Construction Co., No.

05-4182 (E.D.La.) (class action for damages out of the breach of hurricane protection levees and

flood walls)).  This case involves only one plaintiff and defendants involved in the dispute over

insurance coverage.

        Moreover,  Hurricane Katrina has not been found to be an "accident" under § 1369.  In

Flint v. Louisiana Farm Bureau Mutual Ins. Co., 2006 WL 2375593 (E.D.La. Aug. 15, 2006), the

court disagreed with Farm Bureau's contention that the court in Chehardy found that Hurricane

10

Katrina satisfied the definition of an accident under § 1369.  Further, the court in <u>Flint</u> stated that

the Court of Appeals never reached the conclusion that Hurricane met the definition of a § 1369

accident in <u>Wallace v. Louisiana Citizens Property Ins. Co.</u>, 444 F.3d 697 (5th Cir. 2006).  The

court in <u>Flint</u> declined to interpret the statutory definition of accident so broadly as to classify

Hurricane Katrina as an accident.  The court in <u>Flint</u> acknowledged that there is § 1369

jurisdiction under <u>Chehardy</u> because the levee break is the requisite accident that caused the

death of at least 75 natural persons at a discrete location.

The defendants further contend that there is "piggyback" jurisdiction under the MMTJA

and 28 U.S.C. § 1441(e)(1)(B) because Hanover is a defendant in <u>Vanderbrook v. State Farm

Fire & Cas. Co.</u>, No. 05-06323,[5] an action pending in this court that involves similar issues and

over which the court has jurisdiction under § 1369(a).  Unlike <u>Vanderbrook</u>, this case does not

involve a break in the levee, and the defendants cannot piggyback on the § 1369 jurisdiction of

an unrelated case pending in this court.

## E.  Statement under 28 U.S.C. § 1292(b) and Stay Order

Hanover requests a statement under § 1292(b)[6] that an immediate appeal should be taken

---

[5]     <u>Vanderbrook</u> has been consolidated with <u>Chehardy</u>, and 20 other pending lawsuits.
Wallace was removed to federal court based on § 1441(e)(1)(B) and "piggybacked" on the §
1369 original jurisdiction in <u>Chehardy</u>.  <u>See</u> <u>Flint</u>, 2006 WL 2375593 at *3, n.5.

[6]   Section 1292(b) provides:
    When a district judge, in making in a civil action an order not otherwise
    appealable under this section, shall be of the opinion that such order involves a
    controlling question of law as to which there is substantial ground for difference
    of opinion and that an immediate appeal from the order may materially advance
    the ultimate termination of the litigation, he shall so state in writing in such order.
    The Court of Appeals which would have jurisdiction of an appeal of such action

and seeks an order staying the remand to state court.  Hanover contends that the issues in the
motion  to remand involve two controlling questions of law over which there is substantial
ground for a difference of opinion:  1) whether the MMTJA is limited in application to cases
involving multiple plaintiffs and defendants, and 2) whether Tapscott precludes the fraudulent
misjoinder of contract claims brought against diverse insurers and tort claims against non-diverse
insurance brokers.

       "Congress has placed broad restrictions on the power of appellate courts to review
district court orders remanding removed cases to state courts."  Things Remembered, Inc. v.
Petrarca, 116 S.Ct. 494 (1995).  "No appeal lies from a remand ruling, no matter how erroneous,
which is actually predicated on lack of federal subject matter jurisdiction."  Arnold v. State Farm
Fire and Casualty Company, 277 F.3d 772, 775 (5th Cir. 2001) (citing Thermtron Prods., Inc. v.
Hermansdorfer, 96 S.Ct. 584 (1976)); see also 28 U.S.C. § 1447(d).[7]  The basis of the remand in
this case is lack of subject matter jurisdiction:  the court lacks diversity jurisdiction because the
non-diverse party is not improperly joined or fraudulently misjoined, and the court lacks
jurisdiction under the MMTJA.  Therefore, review is barred under § 1447(d).  Certification

_____

       may thereupon, in its discretion, permit an appeal to be taken from such order, if
       application is made to it within ten days after the entry of the order:  *Provided,*
       *however*, That application for an appeal hereunder shall not stay proceedings in
       the district court unless the district judge or the Court of Appeals or a judge
       thereof shall so order.

    [7]   "An order remanding a case to the State court from which it was removed is not
reviewable on appeal or otherwise, except that an order remanding a case to the State court from
which it was removed pursuant to section 1443 [Civil Rights Cases] of this title shall be
reviewable by appeal or otherwise."

pursuant to § 1292(b) does not change the fact that the appeal is barred under § 1447(d).  <u>See</u>
<u>Williams v. AFC Enterprises, Inc.</u>, 389 F.3d 1185, 1187 n.3 (11th Cir. 2004).  Accordingly, the
motion to include a state under § 1292(b) and to stay order of remand is denied.

### III. CONCLUSION

The non-diverse party is not improperly joined, and the court lacks subject matter
jurisdiction to hear the case.  Appellate review is barred under §1447(d); therefore, the motion to
certify the remand order for an immediate appeal and to stay the remand is denied.

New Orleans, Louisiana, this __6th__ day of September, 2006.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**